IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 18–128–BLG–SPW |
| Plaintiff, | |
| vs. | ORDER |
| DAMEON PIERRE BEASLEY, | |
| Defendant. | |

On June 16, 2023, Defendant Dameon Pierre Beasley filed a motion under 18 U.S.C. § 3582(c)(1)(A) to reduce his 180-month federal drug and firearm sentence. (Doc. 150; *see* Doc. 132 (Judg.).) His projected release date is October 17, 2031. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed March 6, 2024). On June 20, 2023, counsel was appointed to represent the defendant. (Doc. 151.) Appointed counsel filed an amended motion on February 1, 2024. (Doc. 162.) The government opposes. (Doc. 165.) For the reasons stated below, Beasley's motion is denied.

ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable

1

policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).[1] Thus, this Court's decision turns on whether the defendant has presented extraordinary and compelling reasons for a reduction and whether that reduction comports with the objectives of § 3553(a). *See Keller*, 2 F.4th at 1284.

Here, Beasley argues his hypertension and physical symptoms related to his high blood pressure increase his risk of serious health conditions due to COVID-19, and that the alleged lack of programming at FCI Sheridan constitute extraordinary and compelling reasons to decrease his sentence. The government disagrees, arguing that his reasons for release are neither extraordinary nor compelling and that a sentence reduction is not justified under the 18 U.S.C. § 3553(a) factors. The government is correct.

---

[1] On November 1, 2023, the Sentencing Commission amended its policy statements to further define "extraordinary and compelling reasons." *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 1, 2023) (*available at* https://perma.cc/H7S5-ZP75). Although the amendments were not in effect when the pro se motion was filed, they were in effect when the parties briefed this matter, and the parties' arguments reflect the changes.

2

I.   **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Beasley filed a request for relief with the warden at his facility on October 28, 2020, and again in an undated letter received by the BOP on January 10, 2022. (*See* Doc. 164-1 at 1, 2.) It does not appear that the BOP has responded. Beasley has therefore exhausted his administrative remedies as required by statute.

II.  **Extraordinary and Compelling Reasons**

The Sentencing Commission provides explicit examples of what constitutes an "extraordinary and compelling reason," including where the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" or "is at increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease or [an] ongoing public health emergency." USSG § 1B1.13(b)(1)(C). Another explicit example provided by the Sentencing Commission is if the defendant presents circumstances that "are similar in gravity"

3

to the specifically enumerated examples. USSG § 1B1.13(b)(5). The Sentencing Commission also explains that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." USSG § 1B1.13(d).

### A.   COVID-19

Beasley affirms that he is overweight and suffers from hypertension, both of which put him at a higher risk of severe illness or death if he were to contract COVID-19. He also argues that COVID-19 is more dangerous in BOP custody then outside. This increased risk, Beasley argues, is an extraordinary and compelling reason justifying his early release from custody. Neither argument is persuasive.

His last BOP medical record, dated October 20, 2022, notes that Beasley weighs 189 pounds and his hypertension has been "resolved." (Doc. 166 at 126–27.) As of October 2020, Beasley weighed 216 pounds. (*See id.* at 10.) At 64 inches tall, both weights may be high, but Beasley's medical records do not indicate that his health is poor. At his most recent appointment, Beasley's medical provider indicated that his disposition plan is to "[f]ollow-up at Sick Call as Needed" and that he is "[d]oing well off of medication." (*Id.* at 127.)

Beasley is also at least partially vaccinated against COVID-19. He received the first dose of the Moderna COVID-19 vaccine on October 14, 2021 and the second on November 11, 2021. (*Id.* at 112.) Beasley was offered a COVID-19

4

vaccine booster on November 2, 2022, but refused to receive it. (*Id.* at 133.) Regardless of whether he accepted the booster, evidence that it was offered demonstrates that BOP has given him the opportunity to reduce his risk of severe illness or death from COVID-19. *See United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar 10, 2021). He also previously contracted and recovered from COVID-19 while in BOP custody. (Doc. 166 at 132.)

In support of his argument that COVID-19 is more dangerous in BOP custody then outside, Beasley cites to 2020-era scientific sources and caselaw that explain the unique challenge of controlling COVID-19 outbreaks within federal prisons. (*See* Doc. 163 at 9.) However, while the risk of COVID-19 exposure still exists, especially in the custodial setting, the spread of COVID-19 has significantly decreased and there is no evidence of an "ongoing outbreak" at FCI Sheridan. *See United States v. Shuler*, 2024 WL 836840, at *3 (D. Mont. Feb. 28, 2024) (making a similar finding regarding FCI Victorville). Because his medical provider has not indicated that he is in poor health, he is vaccinated against COVID-19, and FCI Sheridan does not pose an extraordinary COVID-19-related health risk, the record does not demonstrate that his health conditions put Beasley at a higher risk of severe illness or death. Thus no medical extraordinary and compelling reason exists.

B.  **BOP Programming**

Beasley also argues that the COVID-19-induced conditions at FCI Sheridan are extraordinary and compelling because they have prevented him from participating in programming that may rehabilitate him. In support of this argument, he quotes from "an unrelated civil suit based on the confinement conditions" at FCI Sheridan. (*See* Doc. 163 at 11.) However, because Beasley does not provide a citation for the quote, it is hard for the Court to gauge the veracity of the statement. Regardless, a potential lack of programming due to the restrictions BOP believed it needed to take to stop the spread of COVID-19 is not an extraordinary and compelling reason that justifies a prisoner's early release.

III. **Section 3553(a) Factors**

Moreover, demonstrating an extraordinary and compelling reason to reduce a sentence meets only one element of § 3582(c)(1)(A). To determine whether relief is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant"; the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment"; to deter criminal conduct and protect the public; and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C.

6

§ 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Beasley was involved in a large drug trafficking organization that was bringing substantial quantities of methamphetamine into Montana. (PSR ¶¶ 7–29.) During his arrest, investigators found approximately four pounds of methamphetamine, heroin, cocaine, over ten thousand dollars in cash, and two firearms. (*See* PSR ¶¶ 10–14.) Beasley has an extensive criminal history including multiple drug-related felonies. (*See id.* at ¶¶ 44–63.) At sentencing, Beasley faced an advisory guideline range of 235–93 months. The Court ultimately sentenced him to 180 months of imprisonment followed by five years of supervised release. (Doc. 132 at 2–3.) This represented a significant downward variance. To date, Beasley has served approximately 65 months of this sentence.

Beasley's existing sentence already reflects a favorable view of his criminal history and offense conduct. Put simply, Beasley's sentence was the lowest the Court could justify in light of his conduct. Reducing Beasley's sentence to 120 months, as he requests, would ultimately denigrate the seriousness of his crimes and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

7

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 150, 162) is DENIED.

DATED this 22nd day of March, 2024.

*Susan P. Watters*
Susan P. Watters, District Judge
United States District Court